CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
Dennis Price, SBN 279082
Mail: PO Box 262490
    San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
    San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
Phylg @ potterhandy.com
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**, | **Case:** 2:16-cv-01481-CBM-AS |
| Plaintiff, | **Reply Brief in Support of Plaintiff's Motion for An Award of Attorney's Fees** |
| v. | |
| **Donelle Dadigan; US Bank, N.A.;**, | Date:      February 28, 2017 |
| Defendants. | Time:      10:00 a.m. |
| | Ctrm:      8B (First Street Courthouse) |
| | Honorable Consuelo B. Marshall |

---

Reply Brief: Plaintiff's Fees Motion                    2:16-cv-01481-CBM-AS

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    THE COMPLAINT SOUGHT COMPREHENSIVE

       COMPLIANCE AT THE US BANK ........................................................ 1

III.   THE ANSWER DID NOT ADMIT A VIOLATION, DID NOT

       ADMIT LIABILITY, AND DID NOT RENDER LITIGATION

       UNECESSARY ....................................................................................... 4

IV.   US BANK'S RULE 68 OFFER WAS INADEQUATE ................................. 5

V.    US BANK'S AMENDED RULE 68 OFFER WAS INADEQUATE

       WITH RESPECT TO BOTH MONETARY AND REMEDIAL

       RELIEF ................................................................................................ 6

VI.   LINDSAY'S SETTLEMENT POSTURE WAS REASONABLE AND

       EFFECTIVE; LINDSAY ULTIMATELY GOT THE ENTIRE

       FACILITIES FIXED ............................................................................. 8

VII.  RULE 68 OFFERS DO NOT SHIFT FEES IN ADA CASES ..................... 9

VIII.  CONCLUSION .................................................................................... 10

Reply Brief: Plaintiff's Fees Motion                    2:15-CV-03277-BRO-FFM

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc.,*

4

    2010 WL 2889823 (M.D. Fla. 2010) ........................................... 6

5

*Deanda v. Sav. Inv., Inc.,*

6

    267 F. App'x 675 (9th Cir. 2008) .......................................... 10

7

*Doran v. 7-11,*

8

    524 F.3d 1034 (9th Cir. 2008) ............................................. 2

9

*Marek v. Chesny,*

10

    473 U.S. 1 (1988) ............................................................ 9

11

*Oates v. Oates,*

12

    866 F.2d 203 (6th Cir. 1989) .............................................. 5

13

*Owens v. Ryder Services Corp.,*

14

    918 F.Supp. 366 (N.D. Ala. 1996) ...................................... 10

15

*United States v. Trident Seafoods Corp.,*

16

    92 F.3d 855 (9th Cir. 1996) ............................................... 9

17

*Webb v. James,*

18

    147 F.3d 617 (7th Cir. 1998) .............................................. 9

19

*Wyatt v. Ralphs Grocery Co.,*

20

    65 F. App'x 589 (9th Cir. 2003) .......................................... 10

21

**Statutes**

22

42 U.S.C. § 12205 ................................................................. 9

23

Cal. Civ. Code § 52(a) ........................................................... 10

24

Fed. R. Civ. P. 65 .................................................................. 5

25

Fed. R. Civ. P. 68(a) .............................................................. 5

26
27
28

ii

Reply Brief: Plaintiff's Fees Motion        2:15-CV-03277-BRO-FFM

## I.  PRELIMINARY STATEMENT

One of the beautiful things about the adversarial process is that you don't get to silence your opponents. You can spin the facts and create fanciful tales but your opponent gets to respond and identify any nonsense. Here, US Bank bases the bulk of its opposition on a "timeline" story, whose highlights sound like this:

- Lindsay (and her attorneys) are shakedown artists
- Upon being served, US Bank admitted liability and fixed everything
- US Bank promptly offered Lindsay everything she could obtain
- Lindsay rejected US Bank's offer for the sole reason of running up fees
- This court should "send a message" and punish Lindsay

But this does not fairly or accurately capture the factual or procedural events in this case. As discussed below, US Bank did not admit liability, did not fix everything, and did not offer Lindsay what she sought in her complaint. When US Bank finally agreed to comprehensive fixes, the case settled.

## II.  THE COMPLAINT SOUGHT COMPREHENSIVE COMPLIANCE AT THE US BANK

One of the public criticisms levelled against ADA plaintiffs has to do with the comprehensiveness of the remedies sought. California Senate Bill 1186, signed into law on September 19, 2012, explains in section 24 (an uncodified section) that a "very small number of plaintiff's attorneys have been abusing the right of petition" by filing lawsuits that only seek money and "without seeking and obtaining actual repair or correction" of the "violations on the site," which only seeks to "financially enrich the attorney and claimant and do not promote accessibility either for the claimant or the disability community as a whole."

Thus, while Ms. Lindsay has *always* sought injunctive relief, this oft-repeated criticism has resolved Ms. Lindsay to make sure that the facilities and businesses she sues remove unlawful violations. Thus, in this case, the complaint

1

1    not only identified the inaccessible transaction counter and inaccessible parking,

2    i.e., the barriers she personally encountered or witnesses, but also expressly put

3    US Bank on notice that:

> Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See Doran v. 7-11, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

10   Complaint, ¶ 35. The Ninth Circuit explains the importance of comprehensive

11   remediation: "a rule limiting a plaintiff to challenging the barriers he or she had

12   encountered or personally knew about would burden businesses and other places

13   of public accommodation with more ADA litigation, encourage piecemeal

14   compliance with the ADA, and ultimately thwart the ADA's remedial goals of

15   eliminating widespread discrimination against the disabled and integrating the

16   disabled into the mainstream of American life." *Doran v. 7-11*, 524 F.3d 1034,

17   1047 (9th Cir. 2008).

18       Given the explicit allegations in the complaint and the parties' discussions

19   about the subject, there was no doubt that Lindsay sought remedial relief as to *all*

20   *barriers* at the US Bank.  Not only did Lindsay have standing and a right to seek

21   comprehensive remedial relief, and not only did Lindsay expressly plead such in

22   the complaint, but Lindsay's counsel's experience with US Bank demonstrates

23   how critical it is to ensure that US Bank is forced to address *all* the violations. The

24   Center for Disability Access has identified the US Bank, along with a handful of

25   other businesses, as a sophisticated business that will only undertake remedial

26   projects when *forced* to do so. Exhibit 1 (Potter Dec), ¶ 3. The Center for

27   Disability Access sued US Bank in numerous other cases before this one,

28   stretching back over the last eleven years. Here is a representative sampling:

2

| Client | Case No. | Court | Filed | Barriers |
|--------|----------|-------|-------|----------|
| Monson | 30-08-00113731 | Santa Ana Superior | 10/22/08 | No accessible counters or doors |
| McCory | RIC1105844 | Riverside Superior | 4/1/11 | No accessible counters |
| Figueroa | VC059271 | Norwalk Superior | 8/4/11 | No accessible counters or tables |
| Carpenter | SC114809 | Santa Monica Superior | 11/8/11 | No accessible parking |
| Villegas | TC026094 | Compton Superior | 1/17/12 | No accessible counters |
| Langer | 30-2013-00623683 | Santa Ana Superior | 1/10/13 | No accessible parking |
| Johnson | 2:13-CV-00892-M | Eastern District | 5/7/13 | No accessible parking |
| McComb | 13K10204 | Los Angeles Superior | 7/9/13 | Paths of travel |
| Barrera | 2:15-CV-00342-P | Central District | 1/16/15 | No accessible counters |
| Lammey | 2:15-CV-01637-D | Central District | 3/6/15 | No accessible counters |

Exhibit 1 (Potter Dec), ¶ 2.  Yet, despite being sued on numerous occasions for lack of parking and lack of accessible transaction counters, and despite having barrier removal obligations for more than 26 years, US Bank admits that it did not assess its facilities or take any compliance steps until this lawsuit was filed in March 2016.[1]

In short, Lindsay pled and sought comprehensive compliance at the US Bank in her complaint. It is against this factual backdrop that the settlement negotiations and procedural history must be examined.

---

1 Thus, it is somewhat ironic that US Bank dares use the word "proactive" when discussing it's actions. *See* Opposition Brief, p. 5, lines 24-25.

3

### III.   THE ANSWER DID NOT ADMIT A VIOLATION, DID NOT ADMIT LIABILITY, AND DID NOT RENDER LITIGATION UNECESSARY

US Bank argues: "Because defendants admitted an ADA violation in their Answer, Plaintiff had no further need to litigate and any subsequent fees incurred were unnecessary." *See* Opposition Brief, p. 8, lines 6-9. This argument lacks merit and demonstrates the untrustworthy nature of US Bank's claims.

US Bank's Answer does not admit a violation. It does not admit liability. There is no basis to claim that the Answer rendered further litigation unnecessary. The *only substantive* thing the Answer admits is that transaction counters were not "code-compliant." But the mere fact that an element is not code-compliant does not establish a violation or liability.  In fact, the Answer denies:

       1.   that Lindsay even went to the bank (¶ 10);

       2.   that there were any violations with the parking (¶¶ 23-24);

       3.   that Lindsay had standing, i.e., a reason to return (¶¶ 29-31);

       4.   that the barriers were readily achievable to remove (¶ 33);

       5.   that US Bank violated the ADA (¶¶ 40 & 45);

       6.   that US Bank violated the Unruh Civil Rights Act (¶ 48)

       7.   that US Bank was liable for any damages (¶ 49)

It is meritless for US Bank to argue that its Answer rendered all further litigation unnecessary or that "all that was necessary was to file a cookie-cutter complaint . . . at most, three hours of time is all that was needed to draft, file and serve the complaint. That is reasonable and compensable – nothing more." *See* Opposition Brief, p. 10, lines 1-4.

## IV.   US BANK'S RULE 68 OFFER WAS INADEQUATE

US Bank touts its Rule 68 Offer (Dkt Entry 29-4) and argues that Lindsay should have accepted it. But that Rule 68 Offer was inadequate.[2] While the monetary terms were reasonable – and comparable with the vast majority of settlements by Lindsay in these cases – the offer of remedial relief was quite deficient. US bank offered to provide an accessible transaction counter *but nothing more*. With respect to the parking, US Bank stated that "to the extent" that its expert thought that there was a violation in the parking lot, it would fix them. *See* Offer (Dkt 29-4), p. 2, lines 5-8.

This is entirely inadequate. First, a Rule 68 Offer must be framed to "allow judgment on specified terms." Fed. R. Civ. P. 68(a). The terms must be plainly spelled out because the judgment is supposed to be done by *the clerk* as a "ministerial rather than discretionary" act. *See* Fed. R. Civ. Pro 68(a); *Oates v. Oates*, 866 F.2d 203, 208 (6th Cir. 1989). "Rule 68 judgments are self-executing." *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991). But the Rule 68 Offer in this case did not *specify* any injunctive relief with respect to the parking. The Rule 68 Offer simply says that if the defense expert found something . . . . There are no specifics.  What, exactly, did US Bank think a clerk was going to do? No injunction could have issued on that Rule 68 Offer.

Pursuant to Rule 65, every injunction must "state its terms specifically" and "describe in reasonable detail-and *not by referring* to the complaint or *other document*-the act or acts restrained or required." Fed. R. Civ. P. 65 (emphasis added). A "Court simply cannot enjoin a party from discriminating against individuals with disabilities and order compliance with all sections of the ADA."

---

[2] Note: Rule 68 offers do not apply in either ADA or Unruh cases (as discussed below in section VII). But although they do not shift or bar fees/costs, they are still *settlement* offers and treated seriously as such.

*Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc.*, 2010 WL 2889823, at *1 (M.D. Fla. 2010).

Not only did US Bank's Rule 68 offer not identify what it was actually offering to do but it required Lindsay to trust the competence and thinking of an unknown, unidentified defense expert. In fact, it turns out that US Bank ended up using expert Karen O. Haney. *See* Expert Report (Dkt Entry 27-4). Lindsay's counsel has had vehement disagreements with Ms. Haney on other cases. In fact, in the case *Salinas v. Pacific Castle*, No. 8:14-cv-01233-CJC-AN (C.D. Cal. 2014), Ms. Haney was the defense expert and declared a restaurant's transaction counter fully compliant. Exhibit 1 (Potter Dec), ¶ 6. The Center for Disability Access's expert disagreed and the cross-motions for summary judgment were heard. Judge Carney agreed with Salinas and rejected Karen O. Haney's expert opinions about compliance. *Id.*. The point is that it is not unreasonable for a plaintiff to want to see the actual report and recommendation of a defense expert before agreeing to that expert's pronouncement.

Just as importantly, despite the very clear allegations of the complaint (paragraph 35), US Bank offered *nothing* concerning fixes at the rest of the bank facilities, just pretending that these allegations did not exist. In short, the Rule 68 Offer was not an adequate settlement offer and Lindsay acted reasonably in rejecting it. Granted, neither side had the benefit of a site inspection at that point. The discussion was premature.

## V.   US BANK'S AMENDED RULE 68 OFFER WAS INADEQUATE WITH RESPECT TO BOTH MONETARY AND REMEDIAL RELIEF

In early May of 2016, US Bank sent photographs and invoices demonstrating that both the transaction counter and parking violations had been fixed on April 25, 2016. *See* Letter (Dkt Entry 29-5). This, of course, was far

1   better than the non-specific promise to do what an unidentified expert *might*
2   recommend for parking found in the expired Rule 68 Offer. And, therefore, the
3   parties worked hard to settle the case. The parties exchanged a series of
4   settlement offers/demands in rapid fashion. On May 13, 2016, US Bank drew a
5   line in the sand at $10,000, which it memorialized in an amended Rule 68 Offer.
6   *See* Offer (Dkt Entry 29-6). Lindsay countered with a demand for $13,500. But
7   US Bank refused to move again. The last exchange of emails – where the impasse
8   was reached – is submitted as exhibit 2.

9        US Bank had every right to determine its own settlement position and to
10   not budge above $10,000. But Lindsay, likewise, had a right to demand
11   $13,500. At that point in time, Lindsay's fees were at $8,375 and her costs were
12   $1,040 for a total of $9,415. *See* Billing Statement (Dkt Entry 27-3). Given that
13   the statutory damages were $4,000, this means that Lindsay's demand was
14   entirely reasonable.

15       The other issue floating around was Lindsay's demand for full compliance
16   at the facility. US Bank had never offered full compliance. In fact, we *now* learn
17   (for the first time) that US Bank received its expert's report, outlining all the
18   violations in the entire facility, on April 6, 2016 . . . *a full month before*. *See*
19   Trachtman Dec (Dkt. Entry 29-1), p. 4, lines 10-12. But US Bank did not provide
20   Lindsay with a copy or make any reference to that report in its offer or offer to fix
21   any violations identified by its expert. US Bank kept its findings secret even
22   though it knew that Lindsay's repeated demand was for full compliance.

23       Contrary to US Bank's claim that Lindsay was trying to run up the fees in
24   this case, it was in the weeks *following* this settlement impasse, that Lindsay *first*
25   drafted her written discovery and set up the site inspection. *See* Billing Statement
26   (Dkt Entry 27-3), pp. 10-11.[3] And it was on May 27, 2016 – two days after

27

28   _____

[3] Sarah Gunderson and Teresa Allen did the discovery. Between the two of them
(Dkt Entry 27-3 & 27-4) they billed a total of 2.4 hours on drafting ALL

7

Lindsay's expert's site inspection – that US Bank finally provided a copy of its CASp report to Lindsay. *See* exhibit 3 (Email Exchange of 5-27-16). In other words, US Bank refrained from providing this CASp report for seven weeks and until *after* Lindsay's own expert inspection. While US Bank might not have had a previous discovery obligation to turn this Report over, it flies in the face of US Bank's claim that Lindsay was simply running up fees by pursuing needless discovery. In fact, Lindsay still does not know *when,* exactly, US Bank fixed everything on the CASp report.

## VI.   LINDSAY'S SETTLEMENT POSTURE WAS REASONABLE AND EFFECTIVE; LINDSAY ULTIMATELY GOT THE ENTIRE FACILITIES FIXED

Lindsay's site inspection and US Bank's turn-over of its CASp report resulted in the ultimate settlement. In August of 2016, the parties executed the operative settlement in this case. *See* Settlement Agreement (Dkt Entry 27-4). In that agreement, US Bank represents that it has now fixed "all the violations identified in the CASp report prepared by Compliance Design Consultants dated April 6, 2016 , attached hereto as Exhibit "A" . . . ." *Id.* at ¶ 3.1. This report identified violations with directional signage, paths of travel impediments, cross-slopes on sidewalks, door entrance thresholds, landing issues, excessive door opening force and other violations never before admitted by US Bank or offered in settlement. *See* Settlement Agreement, Appendix A (Report), (Dkt Entry 27-4). Lindsay was reasonable in insisting on – and ultimately obtaining – full compliance at the US Bank facilities.

US Bank's scornful and incomplete treatment of the settlement history is both misleading and ineffective. Lindsay prevailed. She obtained comprehensive

---

discovery in this case. A total of $600. This is the "bombardment" identified by US Bank? *See* Opposition Brief, p. 9, lines 7-9.

Reply Brief: Plaintiff's Fees Motion                    2:15-CV-03277-BRO-FFM

1  injunctive relief. When one compares the anemic Rule 68 Offer of March 31,

2  2016 (Dkt Entry 29-4) with the ultimate list of fixes (Dkt Entry 27-4, Appendix

3  A) obtained, it is clear that Lindsay acted reasonably in refusing to accept the

4  Rule 68 Offer.

5

6  **VII.   RULE 68 OFFERS DO NOT SHIFT FEES IN ADA CASES**

7  　　US Bank argues that "Defendant's Rule 68 Offer of Judgment precludes

8  Plaintiff from recovering *any* fees incurred beyond the date of the offer." *See*

9  Opposition Brief, p. 5, lines 19-20. But Rule 68 Offer's do not apply to fees in

10  ADA cases. By its own terms, Rule 68 only shifts "costs." In *Marek v. Chesny*, 473

11  U.S. 1 (1988), the Supreme Court held that the term "costs" in Rule 68 includes

12  attorney's fees only if the underlying statute defines "costs" to include attorney

13  fees. *Id.* at 9. The most common way this would occur is if the statute expressly

14  stated that costs include attorney fees or if the statue stated that attorney fees

15  were a part of costs. *See id*. If, however, the underlying statute lists attorney fees

16  and costs separately, then attorney fees are not subject to the cost-shifting

17  provisions of Rule 68. *Id.* at 14-15. The Ninth Circuit has been strict in its

18  construction of *Marek*, holding that where the statute in question does not

19  specifically define attorney's fees as costs, the fee-shifting provisions of Rule 68

20  do not apply. *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 860 (9th Cir.

21  1996).

22  　　In this case, the underlying statutes are the ADA and the Unruh Civil

23  Rights Act.  The ADA states that "the court . . . in its discretion, may allow the

24  prevailing party . . . a reasonable attorney's fee, including litigation expenses and

25  costs." 42 U.S.C. § 12205.  Under a plain reading of the ADA, attorney fees and

26  costs are listed separately. Additionally, explicit authority is found in *Webb v.*

27  *James*, 147 F.3d 617, 622-23 (7th Cir. 1998), holding that "costs" under the

28  ADA do not include attorney fees and, therefore, are not subject to the cost-

1   shifting provision of Rule 68. *See also Owens v. Ryder Services Corp.*, 918 F.Supp.

2   366 (N.D. Ala. 1996) (holding that attorney fees are not shifted by Rule 68 offers

3   in ADA actions). "Rule 68's cost-shifting device does not apply to fees under the

4   ADA." *Wyatt v. Ralphs Grocery Co.*, 65 F. App'x 589, 591 (9th Cir. 2003); *Deanda*

5   *v. Sav. Inv., Inc.*, 267 F. App'x 675, 677 (9th Cir. 2008) ("The district court

6   properly concluded that Rule 68 itself did not defeat [plaintiff's] eligibility for

7   fees, as neither the ADA nor the Unruh Act defines "costs" to include attorney's

8   fees."). The Unruh Civil Rights Act actually lists attorney's fees and costs in

9   entirely separate codes. The entitlement to attorney's fees is found at Cal. Civ.

10  Code § 52(a), while costs are addressed in section 1033 of the California Code

11  of Civil Procedure.

12          Although the cost shifting provisions of Rule 68 do not apply here and

13  cannot "preclude" fees, Lindsay took treated them as offers as discussed above.

## VIII.   CONCLUSION

         Ms. Lindsay respectfully requests that her motion be granted and she be
awarded $19,487.50 in fees.  Plaintiff also respectfully requests that she be
awarded $2,838.31 in costs and litigation expenses for a total award of
$22,685.81.


Dated: February 14, 2017          CENTER FOR DISABILITY ACCESS


                                  By: /s/ Mark Potter              .
                                      Mark Potter, Esq.
                                      Attorneys for Plaintiff

10